Filed April 15, 1884.

---

No. 11,160.

FRAZER, TRUSTEE, *v.* CLIFFORD ET AL.

MARRIED WOMAN.—*Power to Mortgage her Real Estate.—Security for Debt or Liability.—Law Prior to May 31st, 1879.*—Under the law of this State, as it existed prior to May 31st, 1879, when "An act concerning married women," approved March 25th, 1879, took effect, a married woman had full power, her husband joining with her, to execute a valid mortgage on her separate lands, howsoever acquired by her, to secure the debt or liability of her husband.

SAME.—*Effect of Act of March 25th, 1879.—Repeal by Implication.*—The act of March 25th, 1879, concerning married women, contained no repealing clause or section, but it repealed by necessary implication so much, and only so much, of the previously existing law as was inconsistent or in conflict with the provisions of the later act. Thus, while the later act deprived a married woman of all power "to mortgage or in any manner encumber her separate property, *acquired by descent, devise or gift,*" it did not limit or restrain her power to mortgage or encumber her separate property, *acquired by contract or purchase,* as it existed before such act took effect.

SAME.—*When Mortgage Valid.*—A mortgage given by a married woman and her husband on her separate real estate, acquired by her contract or purchase, to secure the debt of her husband, after the act of March 25th, 1879, concerning married women, took effect, and while it remained in force, is a valid and binding mortgage.

From the Hamilton Circuit Court.

*H. J. Milligan,* for appellant.

*T. J. Kane* and *T. P. Davis,* for appellees.

HOWK, C. J.—The issues joined in this cause were submitted to the court for trial; and at the request of the appellant, the plaintiff below, the court made a special finding

of facts, and stated its conclusions of law thereon. The appellant excepted to the court's conclusions of law, and judgment was rendered in accordance therewith.

The only error assigned by the appellant, in this court, is that the trial court erred in its conclusions of law upon the facts specially found.

The special finding of facts was, in substance, as follows:

"On the 4th day of January, 1880, the defendant Matilda A. Clifford and Luther O. Clifford executed to the Franklin Life Insurance Company, a corporation organized and existing under the laws of Indiana, their note set out in the complaint, whereby they promised to pay said insurance company the sum of $500, with five per cent. attorneys' fees, payable without relief from valuation or appraisement laws, with interest at eight per cent. per annum from date, payable semiannually; and at the same time, and as part of the same transaction, said Matilda A. Clifford and Luther O. Clifford executed to said insurance company their mortgage set out in the complaint, whereby they conveyed to said insurance company the following real estate, in Hamilton county, Indiana, to wit: Eighty acres off of the south side of the northwest quarter of section 6, township 19 north, of range 5, to secure the payment of said note. It was provided in said mortgage, that 'in default of payment of interest when due, the principal sum shall become due.' The interest on the note was paid June 10th, 1881, but there was no payment of interest maturing after that date. On the 4th day of August, 1881, on the 4th day of February, 1882, and on the 4th day of August, 1882, defaults were made in the payment of interest, and no part of the principal was at any time paid. On the 6th day of May, 1882, the Franklin Life Insurance Company, being in embarrassed and failing circumstances, in pursuance of the statutes of this State providing for voluntary assignments for the benefit of creditors, made a general assignment of all its property to James S. Frazer, in trust for all its *bona fide* creditors, which assignment was, on the 6th

day of May, 1882, duly entered of record in the recorder's office of Marion county, Indiana, where the home office of said insurance company was at that time, and said James S. Frazer at once entered upon the duties of his trust, and has been ever since so acting. The note aforesaid was the evidence of a loan of $500 on that day made to said Matilda A. and Luther O. Clifford. The $500 thereby represented was the cancellation of the note of $350 of said Luther O. Clifford, due to and held by said insurance company, and $150 taken by said Matilda A. Clifford and by her expended in the improvement of the real estate described in said mortgage, for which purpose such sum was borrowed at the date of said $500 note and mortgage. The said Matilda was the wife of her co-defendant, and he then was, and for one year prior thereto had been, indebted to the mortgagee in the sum of $350, for which sum the mortgagee then held his note; and the only consideration for the execution of the $500 note and mortgage was the payment of said $150 cash to said Matilda and the surrender to Luther O. Clifford and cancellation of his $350 note. The $500 note was taken by the mortgagee in sole reliance upon the mortgage as security, said L. O. Clifford being then and there insolvent.

"At the date of said mortgage said Matilda A. Clifford was the owner in her own right of the real estate described therein, and, with her husband, was living on and operating the same, and her title came to her in the following way: On the —— day of ——, 1859, Cary W. Harrison, the father of said Matilda A. Clifford, conveyed to her, by good and sufficient deed, the following real estate in Hamilton county, Indiana, to wit: The undivided two-thirds part of fifty acres off of the north end of the west half of the northeast quarter of section 30, township 19, range 5. Said conveyance was an advancement by said Cary W. to his daughter, and was purely a gift. Said Matilda A. went into full possession of said real estate, and was the owner of the same free of the claim of any person. On the 3d day of August, 1861, said Cary W. Harrison con-

veyed to his son John J. Harrison the following real estate in Hamilton county, Indiana, to wit: The south half of the northwest quarter of section 6, in township 19 north, of range 5 east, which conveyance was an advancement and gift by said Cary W. to John J. Harrison, the brother of said Matilda A. Clifford. Said John J. Harrison went into possession of said real estate, and was the full and perfect owner thereof. At the dates of these conveyances said Cary W. Harrison was a widower, but he afterwards intermarried, and desired to have the land he had conveyed to said Matilda A. Clifford, to wit, the two-thirds part of fifty acres aforesaid, for a residence. He then proposed to said Matilda A. Clifford, if she would convey to him the real estate aforesaid which he had conveyed to her, he would cause his son John J. Harrison to convey to her the south half of the northwest quarter of section 6, township 19, range 5 east, in Hamilton county, Indiana.

" In order to induce her to make such conveyance and exchange of property, he offered to give her personal property of the value of $200. Matilda A. Clifford accepted these terms, and, in compliance therewith, conveyed, her husband joining with her, the two-thirds of fifty acres aforesaid, theretofore given to her by her father, back to him; and at the same time, and as part of the same transaction, he, said Cary W. Harrison, caused said John J. Harrison to convey the following real estate to her, said Matilda, to wit: The south half of the nothwest quarter of section 6, township 19, range 5, in Hamilton county, Indiana, and, in addition thereto, said Cary W. Harrison gave said Matilda $200 worth of personal property for making said conveyance. In order to induce said John J. Harrison to make said conveyance to said Matilda, said Cary W. Harrison conveyed to him the following real estate in Hamilton county, Indiana, to wit, sixty acres of land. Afterwards, to wit, February 7th, 1865, it appearing that the south half of the northwest quarter of section 6, township 19, range 5 aforesaid, contained more than eighty

acres (the parties having supposed theretofore that it contained only eighty acres), at the request of said John J. Harrison, and in consideration of his promise to convey to her eighty acres off of the south side of the northwest quarter of section 6, township 19, range 5 east, in Hamilton county, Indiana, and the further consideration of $100 by said John J. Harrison paid to her, said Matilda A. Clifford, her husband joining in the deed, conveyed the south half of the northwest quarter of section 6, township 19, range 5 aforesaid, to said John J. Harrison, and said John J. Harrison thereupon conveyed to said Matilda A. Clifford eighty acres off of the south side of the northwest quarter of section 6, township 19, range 5 aforesaid, as he had agreed to do. Said last named real estate is the same conveyed in the mortgage set out in the complaint."

Upon the foregoing facts the court stated its conclusions of law as follows:

"1st. That defendants Matilda A. Clifford and Luther O. Clifford are jointly and severally indebted to plaintiff in the sum of one hundred and fifty dollars, with interest at eight per cent., from June 10th, 1881, and five per cent. attorneys' fees, amounting in all to one hundred and eighty-one and $\frac{65}{100}$ dollars, payable without any relief whatever from valuation or appraisement laws.

"2d. That Luther O. Clifford is indebted to plaintiff in the sum of three hundred and fifty dollars, with eight per cent. interest, from June 10th, 1881, and five per cent. attorneys' fees, amounting to four hundred and seventy-six and $\frac{35}{100}$ dollars, payable without relief from valuation or appraisement laws.

"3d. The plaintiff's mortgage described in the complaint, is a lien for said one hundred and fifty dollars, interest and attorneys' fees, amounting to one hundred and eighty-one and $\frac{65}{100}$ dollars.

"4th. The mortgaged real estate came to Matilda A. Clifford by a gift from her father.

" 5th. Said mortgage is not a lien for said three hundred and fifty dollars, interest and attorneys' fees, due from Luther O. Clifford."

Did the trial court err in its conclusions of law? If the court was right in its *fourth* conclusion of law, it was right also in its *fifth* legal conclusion. When the note and mortgage in suit were executed, "An act concerning married women," approved March 25th, 1879, which took effect on the 31st day of May, 1879, was in force as a law of this State. In section 10 of this act it was provided as follows:

"A married woman shall not mortgage or in any manner encumber her separate property acquired by descent, devise or gift, as a security for the debt or liability of her husband or any other person." Acts 1879, p. 161.

This section remained in force at least until the 19th day of September, 1881, when it was, perhaps, superseded or repealed by implication by the broader and more comprehensive provisions of section 4 of the act of April 16th, 1881, concerning husband and wife. Section 18 of this latter act provides that "All laws and parts of laws within the purview of this act, or (and) inconsistent therewith, are hereby repealed." Acts 1881, p. 531. In section 4 of this latter act (section 5119, R. S. 1881) it is provided as follows: "A married woman shall not enter into any contract of suretyship, whether as endorser, guarantor, or in any other manner; and such contract, as to her, shall be void."

Prior to the taking effect of the act of March 25th, 1879, concerning married women, on the 31st day of May, 1879, the law of this State, in relation to the right and power of a married woman to encumber her own separate real property, was contained in section 5 of "An act touching the marriage relation and liabilities incident thereto," approved May 31st, 1852. This section 5 provided as follows: " No lands of any married woman, shall be liable for the debts of her husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried: *Provided,* That

such wife shall have no power to incumber or convey such lands, except by deed, in which her husband shall join." 1 R. S. 1876, p. 550.

Under and by virtue of the power conferred upon a married woman by this section of the statute, it was repeatedly held by this court, that she and her husband might execute a valid mortgage on her separate lands to secure the debt of her husband. *Hubble* v. *Wright*, 23 Ind. 322; *Ellis* v. *Kenyon*, 25 Ind. 134; *Philbrooks* v. *McEwen*, 29 Ind. 347; *Hasheagen* v. *Specker*, 36 Ind. 413; *Brick* v. *Scott*, 47 Ind. 299; *Layman* v. *Shultz*, 60 Ind. 541; *Sperry* v. *Dickinson*, 82 Ind. 132; *Gregory* v. *Van Voorst*, 85 Ind. 108.

The act of March 25th, 1879, concerning married women, contained no repealing clause or section. In *Haas* v. *Shaw*, 91 Ind. 384, in speaking of this act, it was said: "While the provisions of the act must be liberally construed, according to their true intent and meaning, yet, * * * they are not to be enlarged by construction beyond the plain meaning of the language used by the law-making power in their enactment." The general purpose and intention of the act, no doubt, was the emancipation of married women from their legal disabilities, or some of them, to the extent specified in the act, and no farther. While this is so, it will be observed that, in section 10 of the act above quoted, the power of a married woman to encumber her separate real property, as it had theretofore existed in this State, was limited and restricted, rather than enlarged. This section 10 repealed by implication so much, and only so much, of section 5, above quoted, of the above entitled act of May 31st, 1852, as was inconsistent or in conflict with the provisions of the later section. Thus, while section 10 above quoted absolutely deprived a married woman of all power to encumber in any manner her separate property acquired by descent, devise or gift, it was wholly silent in regard to her separate property, acquired by her contract or purchase. It must be held therefore, as it seems to us, that after the aforesaid act of March

25th, 1879, took effect, and while it remained in force, a married woman had the power, under the provisions of section 5 above quoted, to encumber her separate real property, acquired by her contract or purchase, by her mortgage, in the execution of which her husband joined, to secure her own or her husband's debts.

In the case at bar, we are of opinion that, upon the facts specially found by the court, its *fourth* conclusion of law above quoted was clearly erroneous; for, upon those facts, it must be held that the mortgaged real estate came to the appellee Matilda A. Clifford, by contract or purchase, and *not* by gift from her father. It follows, also, from what we have said, that the *fifth* conclusion of law above quoted was erroneous; for the mortgage in suit was, upon the facts specially found by the court, a valid security for the entire amount due upon the note in suit of principal, interest and attorneys' fees.

The judgment is reversed with costs, and the cause remanded with instructions to the court to set aside its conclusions of law, and, in lieu thereof, to state conclusions of law not inconsistent with this opinion, and render judgment accordingly.

Filed April 3, 1884.