## STEVENSON, ADMINISTRATOR, v. GRAY ET AL.

[No. 6,867.    Filed October 27, 1909.    Rehearing denied January 7, 1910.    Transfer denied October 13, 1910.]

1. DESCENT AND DISTRIBUTION.—*Intestacy.*—The estate of a childless, unmarried intestate, descends one-half to the father and mother, or survivor, and one-half to the brothers and sisters. p. 414.

2. DESCENT AND DISTRIBUTION.—*Kindred of Half Blood.*—"*Estate * * * by Gift, Devise or Descent.*"—Under §2996 Burns 1908, §2472 R. S. 1881, providing that "kindred of the half blood shall inherit equally with those of the whole blood; but if the estate shall have come to the intestate by gift, devise or descent from any ancestor, those only who are of the blood of such ancestor shall inherit," a daughter who was made beneficiary of her father's insurance policy, takes by "gift," where he paid therefor, and only those of his blood can inherit. p. 414.

3. DESCENT AND DISTRIBUTION.—*Kindred of Half Blood.—Gift.— Use of Money.*—The facts that the beneficiary of an insurance policy taken and paid for by her father, received from the father only a certificate, and that her guardian loaned the money received on such policy, do not change the ancestral quality of the gift, but it would descend at the beneficiary's death one-half to her mother, and the other one-half to the father's kindred of the whole blood. pp. 414, 415.

4. DESCENT AND DISTRIBUTION.— *Ancestral  Property.— Equity.— Following Funds.—Real Property.*—The equitable doctrine of following trust funds through transactions does not obtain in relation to ancestral property, and where the proceeds of inheritances have been invested in real estate, such real estate is held by purchase. p. 415.

5. DESCENT AND DISTRIBUTION.—*Kindred of Half Blood.—Statutes. —Construction.*—Unless a statute of descent requires a different construction, brothers and sisters of the half blood will be preferred to those more distantly related. p. 415.

6. DESCENT AND DISTRIBUTION.—*Intestacy.—Kindred of Half Blood. *—Where a father died leaving an insurance policy payable to his daughter by his first wife, and her guardian collected such insurance, and she died unmarried, the father and mother having separated and each one having remarried and had issue by such second marriage, one-half of such property descends to the mother and the other one-half to the father's child by his second marriage. p. 416.

From Spencer Circuit Court; *Roscoe Kiper,* Judge.

Final report of William Stevenson, as administrator of the estate of Docia H. Hullett, deceased. From an order in favor of Basil Gray and others, the administrator appeals. *Reversed.*

*Allen J. Peyton, Elbert M. Swan* and *William C. Mason,* for appellant.

*Edward Gough* and *Roger D. Gough,* for appellees.

ROBY, P. J.—This case is here on exceptions to the final report of William Stevenson, administrator of the estate of Docia H. Hullett. The controversy arises upon the following facts: William L. Hullett and Alice Hullett were husband and wife, and the parents of Docia H. Hullett. Prior to July 17, 1905, they were divorced, and each of them remarried. Said William L. Hullett procured insurance on his life in a fraternal society in the sum of $3,000, naming his daughter, Docia, as beneficiary. While said certificate was in force, said Hullett died on March 26, 1899, leaving his wife by a second marriage, to whom there was born a few weeks after his death a son, who was named William H. Hullett. William L. Stevenson was appointed guardian for Docia, made proofs of death, and received for her from the insurance company a draft for $3,000, payable to himself as such guardian, which he deposited in a bank to his credit as such guardian. He afterwards loaned said sum to A. J. Peyton, taking his note therefor payable to said guardian with interest. Said Docia H. Hullett died July 17, 1905, at the age of twelve years and unmarried. She left surviving her the half-brother aforesaid, William H. Hullett, her mother, Alice Gray, and her half-brother, Basil Gray, born of her mother's second marriage, and after her death there was born to her mother, Alice Gray, a daughter, afterward named Alzania. Shortly after the death of said Docia, said Stevenson was appointed as administrator of her estate. He qualified and took possession of all her property, including the Peyton note for said $3,000, the

proceeds of which are (for present purposes) intact in the administrator's hands for distribution.

The estate of an intestate, without issue or descendants alive, descends one-half to the father and mother, or the survivor, and one-half to the brothers and sisters.

1.  §2992 Burns 1908, §2469 R. S. 1881. One-half of the amount for distribution therefore goes to the mother, Alice Gray, and as to this there is no dispute.

The statute (§2996 Burns 1908, §2472 R. S. 1881) provides that "kindred of the half blood shall inherit equally with those of the whole blood; *but if the estate shall*

2.  *have come to the intestate* by gift, devise or descent from any ancestor, those only who are the blood of such ancestor shall inherit." (Our italics.) The terms "estate * * * by gift, devise or descent" includes all property, either real or personal, that came to the intestate without the payment of a consideration therefor. *Rountree* v. *Pursell* (1895), 11 Ind. App. 522, 532. The $3,000 received from the insurance company was not secured by the intestate through purchase. It was a provision made by her father for her, in the nature of a gift, and as such possessed the ancestral quality necessary to the application of the provision in favor of those who are of the blood of the ancestor. *Rountree* v. *Purcell, supra.* It would be an unwarrantedly narrow construction to hold that the

3.  daughter received from her father only a certificate in a benefit association, the collection of which destroyed the ancestral quality of the estate so received. That which she received through him and at his death was $3,000 in money, and had she died in possession of the identical coin there could be no doubt that the half-brother of the father's blood would take one-half of said amount under §2996, *supra.*

Most of the cases in which questions of ancestral property have been considered have involved real property, and

it is settled that real estate purchased with the proceeds of inherited property is held by purchase. *Orr* v. *White* (1886), 106 Ind. 341; *Armington* v. *Armington* (1867), 28 Ind. 74; *Frazer* v. *Clifford* (1884), 94 Ind. 482. The practice in equity—of· following a fund through changes and transactions—does not obtain in applying the statutes of descent. Such application is not a question of equity, but of positive law. *Armington* v. *Armington, supra; Orr* v. *White, supra.* Where, however, a statute does not require a different construction, brothers and sisters of the half blood will be preferred to others more distantly connected. *Pond* v. *Irwin* (1888), 113 Ind. 243. A review of legislation on this subject is contained in the cases of *Robertson* v. *Burrell* (1872), 40 Ind. 328, and *Anderson* v. *Bell* (1895), 140 Ind. 375.

The fund received by the decedent from her father through the insurance company was paid to her guardian, and is now held by her administrator. In the case of *Rountree* v. *Pursell, supra,* the presumption was indulged that the guardian managed the estate properly; and it appearing that the money which went into his hands had been commingled with other· funds, so that it would be impossible to distinguish it, its ancestral character ·was held to be lost. In the case at bar, it appears that the guardian deposited the fund in bank and subsequently loaned it to an individual, by whom it was paid to the ad- · ministrator. It thus appears that the fund has been kept intact, and the presumptions accorded to the guardian in the case of *Rountree* v. *Pursell* operate here to· fix the ancestral character of the fund for distribution. The various steps taken by the guardian, in the discharge of his duty to preserve the estate of the ward, do not operate to obscure, much less to change, its character. The result thus reached is exactly the result for the attainment of which

the statute was enacted. The father provided for his
6. infant daughter, the child of himself and his divorced
wife. The child did not long survive him. By law,
one-half of the fund goes to the divorced wife. If the
facts and the statute require that two-thirds of the residue
shall go to the children of the divorced wife by her second
husband, and only one-sixth of the sum to the father's own
infant son, it must be so decreed; but it causes no regret to
find that, upon the facts, one-half of said fund ought to be
distributed to the son, William H. Hullett.

The judgment is reversed and the cause remanded, with
directions to restate the third conclusion of law in accordance herewith.