IN RE ESTATE OF FRANK HOWE.
CHARLES HOWE, APPELLANT, v. NANCY HARDENBERGER
ET AL., APPELLEES.

FILED JUNE 2, 1917.  No. 19480.

Descent and Distribution: ESTATE OF SPENDTHRIFT: DEGREES OF KIN-SHIP. Certain real estate which was inherited by the intestate, a spendthrift ward, was sold under partition proceedings brought by his cotenant. The ward's share of the proceeds of the sale was paid to his guardian. Money received from another source was also paid to the guardian, who used part of the commingled fund for the benefit of the ward, reinvested part, and held part at the time of the death of the ward, which he paid to the administrator. At the final settlement of the estate of the ward the whole of the fund was claimed as ancestral property by his only full brother. Certain half brothers and sisters also claimed to participate in the distribution by virtue of section 1275, Rev. St. 1913. *Held,* that, under the facts, the fund was not of an ancestral character, and should be distributed as other personal property.

APPEAL from the district court for Nemaha county :
JOHN B. RAPER, JUDGE.  *Affirmed.*

*Kelligar & Ferneau,* for appellant.

*Lambert & Armstrong, contra.*

LETTON, J.

Frank Howe died in 1913, intestate.  He was unmar-
ried, and his parents were both dead.  He left surviving
him the plaintiff, Charles Howe, who is his full brother,
and the defendants, who are half sisters, and the children
of a deceased half sister and of a deceased half brother.
Frank Howe and Charles Howe inherited 160 acres of land
from their father, Albert C. Howe.  Mrs. Howe died in
1908.  A guardian was appointed for Frank Howe in
November, 1908, on account of his being a spendthrift.
Afterwards Charles Howe brought partition proceedings
to divide the land, which was found incapable of division,
and was sold by order of court.  Frank's share of the pro-
ceeds of the sale, $5,113.25, was paid to his guardian.
There was also paid to the guardian from money due the
ward from the estate of Mrs. Howe, $284.70.  This com-
mingled fund was part invested, part used for the benefit
of the ward, the costs and expenses were paid from it,
and at the time of Frank's death there was still on hand
$4,165.50 of this money.  This was paid to the adminis-
trator of the estate of Frank Howe.  In the proceedings
for the final settlement of the estate, plaintiff filed a cross-
petition claiming all the residue of the estate, except $250
paid as damages for the death of the deceased, as being
derived from the sale of the real estate, on the ground
that, as the full brother of deceased, he inherits all the
property received by Frank Howe from the estate of his
father.  Defendants insist they are entitled to share in
the distribution.  The issue to decide is whether the brother
of the full blood should inherit the fund, or whether the
children of the half blood are also entitled to share in it.

The decision of this case depends upon the construction to be given section 1275, Rev. St. 1913, which is as follows: "The degrees of kindred shall be computed according to the rule of civil law; and kindred of the half blood shall share equally with those of the whole blood, in the same degree, unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

An exhaustive note dealing with the whole subject of descent and distribution among kindred of the half blood may be found appended to *Anderson v. Bell,* 29 L. R. A. 541 (140 Ind. 575). So much labor and learning has been expended by the courts of other states on this subject that we believe it only necessary to call attention to the cases in which the subject is discussed.

The general tendency of this country is by statute to continue real estate in the blood of the ancestor. *Kelly's Heirs v. McGuire,* 15 Ark. 555. But it is also generally held that, when the real estate has been exchanged for other land or has been converted into money or other property, it loses its ancestral character. *Armstrong v. Miller,* 6 Ohio, 119; *Pence v. Pence's Adm'r,* 11 Ohio St. 290; *Kihlken v. Kihlken,* 59 Ohio St. 106; *Armington v. Armington,* 28 Ind. 74. It is also held that the rule which prevails in equity that a trust fund may be followed as long as it can be identified and segregated does not apply. *Patterson v. Lamson,* 45 Ohio St. 77; *Rountree v. Pursell,* 11 Ind. App. 522; *Stevenson v. Gray,* 46 Ind. App. 412. Where money has been received by an heir from the sale in partition or otherwise of lands descending to him without restriction or limitation, it does not retain its character as real estate, but he may use, invest, or dissipate it as if it came from any other source. *In re Simmons,* 55 Ark. 485; *Emerson v. Cutler,* 14 Pick. (Mass.) 108, 118; 9 R. C. L. 36-38. Nearly $300 of the fund claimed was not derived from the father's estate. The money coming from it was commingled. The specific property not being sep-

arated, distinguished, or kept apart, its ancestral charac-
ter is lost. *Rountree v. Pursell,* 11 Ind. App. 522; *In re
Simpson's Estate,* 144 N. Y. Supp. 1099.

In this state of facts, we are convinced that the prop-
erty has lost its ancestral character. This was the con-
clusion reached by the county court and by the district
court, and we believe that it is in harmony with the
great weight of authority.

AFFIRMED.

SEDGWICK, J., not sitting.