[Civ. No. 2467.   Fourth Appellate District.—January 5, 1940.]

In the Matter of the Estate of ROBERT DAVIS WARNOCK, Deceased.   FARLOW WARNOCK et al., Respondents, v. JOHN B. WARNOCK et al., Appellants.

Jess G. Sutliff for Appellants.

Glenn E. Tinder for Respondents.

GRIFFIN, J.—This is an appeal from a decree establishing heirship.. The decedent, Robert Warnock, died leaving him surviving as next of kin the following: Four nephews, the children of a deceased brother of decedent, respondents herein, who were of the blood of Margery Jane Farlow, a sister of decedent's mother, and three half brothers and a half sister, who were not of the blood of the said Margery Jane Farlow. A petition to determine heirship in this matter was duly filed in the trial court and after hearing, the court held that the nephews were entitled to distribution of the decedent's estate. From this decree the half brothers and half sister have appealed.

The stipulated facts are as follows:

"1. That the above named decedent, Robert Davis Warnock, owned, at the time of his death, eleven (11) shares of preferred stock of the Utah Power & Light Company, which he did not dispose of in his last will and testament.

"2. That the question here to be determined is, to whom said shares of stock shall be distributed, that is to say, (a) to his (decedent's) four nephews . . . ; or (b) to his (decedent's) three half-brothers and a half sister, . . .

"3. That said shares of stock were acquired by the decedent, Robert Davis Warnock, from his aunt, Margery Jane Farlow, under the terms of her last will and testament. That Margery Jane Farlow was the sister of decedent's mother and bequeathed certain property to the decedent, Robert Davis Warnock, namely, eleven (11) shares of preferred stock of the Schramm-Johnson Drugs Company. That said eleven shares of preferred stock of Schramm-Johnson Drugs Company were sold and the proceeds invested in said eleven shares of stock of the Utah Power & Light Company, which latter mentioned stock is the subject-matter to be distributed.

"4. That the relationship of the defendant to the claimants to said stock is:

"(a) Farlow Warnock, Robert Warnock, Edmund Warnock and John Warnock, nephews of decedent, being the sons of Clarence Warnock, the latter being a deceased brother of decedent; and

"(b) John B. Warnock, Joseph Warnock and Julian Warnock, half-brothers of decedent; and Martha Warnock Biscardi, half-sister of decedent."

Appellants first contend that when the decedent sold the Schramm-Johnson Drugs Company stock which he had inherited from his aunt as aforesaid, the said stock then, at that moment, lost its ancestral character so as not to come within the purview of the exception noted in section 254 of the Probate Code, viz., "Kindred of the half blood inherit equally with those of the whole blood in the same degree, *unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors,* in which case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are."

Appellants contend further, therefore, that since the specific property now held by the estate did not come to the decedent from an ancestor that the brothers and sisters (which includes those of the half blood) are in the second degree of relationship to the decedent and that the nephews are in the third degree of relationship, and that accordingly appellants are entitled to the property. Appellants also argue that under section 254, *supra,* and section 225 of the Probate Code, the only surviving relatives of the decedent are the three half brothers and a half sister, and the four children of a deceased brother of the decedent; that therefore, by virtue of the language of the first sentence of section 254, to wit, "Kindred of the half blood inherit equally with those of the whole blood in the same degree . . . " the half brothers and half sister would share in the estate and that by virtue of section 225, "If the decedent leaves neither . . . in equal shares to the brothers and sisters, and to the descendents of deceased brothers and sisters by right of representation" the children of the deceased brother of decedent would also share in this estate, citing 18 Cor. Jur., p. 819, notes 46 and 47; 18 Cor. Jur., p. 820, note 64; 16 Am. Jur., p. 845, note 17; *Estate of Smith,* 131 Cal. 433 [63 Pac. 729, 82 Am. St. Rep. 358]; *Estate of Lynch,* 132 Cal. 214 [64 Pac. 284].

Notwithstanding the stipulation, appellants have raised the additional point, not raised in the trial court, but presented for the first time to this court in an "amended opening brief", that the property "lost its ancestral character". There is no contention that the proceeds from the sale of the

Schramm-Johnson Drugs Company stock were ever at any time mingled with any other property or assets of the deceased. In fact it has been stipulated that the proceeds from the sale of the Schramm-Johnson Drugs Company stock inherited by the deceased were invested in the Utah Power & Light Company stock, and this being true, we would therefore logically conclude that the inheritance, though changed in form, never lost its identity and therefore still retained its ancestral character. This conclusion receives full support in *Estate of Putnam,* 219 Cal. 608 [28 Pac. (2d) 27], wherein the court, in considering section 229 of the Probate Code, in reference to ancestral property, said:

"The reason and purpose of section 229 of the Probate Code is, in the absence of testamentary disposition, to turn the property back to the family from which it came, rather than to permit it to descend to the wife's family. . . . But the section never sought to limit the right of the wife to dispose of it by will or conveyance. For which reasons we find the authorities declaring that property so inherited does not lose its character or status as such by a mere change in form or identity, such, for example, as the exchange of inherited parcel A for parcel B. The latter property acquires the status of that formerly possessed by parcel A." (Citing cases.)

Although no authorities are cited in support of the contention, it is respondent's claim that if Clarence Warnock, father of the respondents, were alive, there is no question but that the provisions of section 254 would entitle him to take preference over the brothers and sisters of the half blood, which contention cannot be disputed. ■ They then claim that Clarence Warnock being deceased, his sons, the respondents, stand in his place and stead by right of representation; that they, as a group, stand in the place and stead of Clarence Warnock, full brother of the deceased, and should take to the exclusion of the brothers and sisters of the half blood. In other words, as we view it, it is respondent's contention that the second clause of the section, the portion following the word "unless", applies to *all* cases wherein next of kin of the half blood claim property which has come to a decedent from an ancestor not of the blood of the claimants and that its effect is to exclude such kindred from the inheritance, in favor of those of the whole blood who are of

the blood of the ancestor. In other words, the respondents urge that "where the property of the decedent was of ancestral origin, and the relatives of the half blood were not of the blood of the ancestor, those relatives of the half blood should be excluded in favor of relatives of the full blood who were of the blood of the ancestor. This view receives support in some early cases of other states. (*Scott* v. *Terry*, 37 Miss. 65; *King* v. *Neely*, 14 La. Ann. 165; *Hitchcock* v. *Smith*, 3 Stew. & P. 29 (Ala.).)

However, this section was construed adversely to respondents' contention in *Estate of Smith, supra,* in which the court held that the exception in section 1394 of the Civil Code (now section 254 of the Probate Code) excluded kindred of the half blood in favor of kindred of the whole blood, where the former were not of the blood of the ancestor from whom the estate came by descent, devise, or gift, and applied only where such kindred were "in the same degree" and had no application to any cases where the degrees were not the same.

In *Estate of Belshaw,* 190 Cal. 278 [212 Pac. 13], the appellants therein made the same contention as the respondents in the instant case. The court therein fully analyzed the decision in *Estate of Smith, supra,* and again adopted the same interpretation.

In *Estate of Sayles,* 215 Cal. 207 [8 Pac. (2d) 1009], the court held that under section 254 of the Probate Code, where the property of the decedent was of ancestral origin, half brothers and half sisters of the decedent who were not of the blood of the ancestor inherit the property in preference to a cousin of the decedent who was of the blood of the ancestor. It fully and maturely considered the opinion in *Estate of Belshaw, supra,* and *Estate of Smith, supra,* and concluded that the last clause of the quoted code section constituted an exception to the rule announced in the first clause thereof and that the second clause was operative *only* when there were kindred of the whole blood who were of the blood of the ancestor and "in the same degree" as those of the half blood. In other words, as construed in *Estate of Belshaw, supra,* kindred of the half blood, under the first clause of the section, inherit equally with those of the whole blood "in the same degree", and under the second or last clause of the section, if the property be of ancestral origin, the kindred of the half blood, not of the ancestor, are excluded only

in favor of those of the whole blood "in the same degree", providing, of course, that those of the whole blood are also of the blood of the ancestor.

In the instant case, it must be conceded that the deceased's brothers and sisters of the half blood come within and are related in the second degree of consanguinity. The children of the deceased brother (nephews) are classified as being related in the third degree. (Sec. 253, Probate Code.) It therefore follows, in view of the above-mentioned decisions, and construction of section 254 of the Probate Code, that the respondents are not "in the same degree" of consanguinity with those of the half sister and half brother. It therefore must follow that the exception provided in that section is not applicable. (*In re Ingram,* 78 Cal. 586 [21 Pac. 435, 12 Am. St. Rep. 80].)

Appellants' contention, then, that the estate must be distributed under section 225 of the Probate Code in equal shares to decedent's brothers and sisters (which includes those of the half blood) and to the descendents of deceased brothers and sisters by right of representation must be sustained.

The judgment of the trial court is reversed. Appellants to recover costs.

Barnard, P. J., and Marks, J., concurred.