21 Cal.2d 498 (1943)
Estate of KATHERINE RYAN, Deceased. ELIZABETH LEARY, Petitioner and Appellant,
v.
HELEN SCULLY et al., Respondents and Appellants; KATHRYN NEVILLE ELLIOTT et al., Respondents.
Sac. No. 5448. 
Supreme Court of California. In Bank. 
Jan. 23, 1943.
 John F. Quinn and Irving T. Quinn for Petitioner and Appellant.
 Hill & Hill and Lewis T. Sterry for Respondents and Appellants.
 Heller, Ehrman, White & McAuliffe, Lawrence C. Baker, Peter A. Breen, Jordan L. Martinelli and Samuel W. Gardiner as Amici Curiae on behalf of Appellants.
 Michael McHugh, Mahan & Mahan, L. E. Mahan, Denver Sevier and Chris R. Petersen for Respondents.
 WARD, J. pro tem.
 In this proceeding to determine heirship the trial court held that the estate of Katherine Ryan, who died intestate, should be distributed in due course of administration equally to twenty-six first cousins of the deceased. The cousins are both paternal and maternal, and in each line some are of the half blood of the deceased. Elizabeth Leary, the only maternal whole blood cousin, and the three paternal whole blood cousins have filed appeals, which by stipulation are submitted on a single bill of exceptions.
 Appellants contend that half blood cousins on the paternal side are excluded by section 254, Probate Code, from sharing in property which came to Katherine Ryan from her mother by descent, devise or gift, and that half blood cousins on the maternal side are excluded from paternal ancestral property.
 Section 254, Probate Code, provides: "Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which *500 case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are." (Formerly 1394, Civ. Code.) This case involves particularly the construction of the words "in favor of those who are."
 The decedent's mother, Julia Leary Ryan, had a full brother, Jeremiah Leary, and a half sister, Abbie Leary Murray. Appellant Elizabeth Leary, daughter of Jeremiah Leary, is decedent's cousin of the whole blood on the maternal side. The sixteen children of Abbie Leary Murray are decedent's maternal cousins of the half blood.
 Similarly, decedent's father, John Ryan, had a full sister, Ellen Ryan Scully, and a half brother, Thomas Neville. The three children of Ellen Ryan Scully are decedent's paternal cousins of the whole blood and are appellants herein. The six children of Thomas Neville are decedent's paternal cousins of the half blood.
 The appellants' contention is that as to property which came to Katherine Ryan by descent, devise or gift from her mother, distribution should be made equally to the four whole blood cousins and to the maternal half blood cousins, excluding the six paternal half blood cousins; as to property which came to Katherine Ryan by descent, devise or gift from her father, it should be divided between the four full blood cousins and the six paternal half blood cousins, excluding the sixteen maternal half bloods.
 It is not contended that full blood cousins are excluded from sharing in any part of decedent's estate because of its ancestral origin. It is conceded that full blood cousins on the paternal side share in property of the decedent which came to her from her mother, and vice versa.
 The problem can be analyzed best by considering the historical background of section 254. The section is a survival of two common law canons of descent. It was the rule at common law that on failure of lineal descendants the inheritance descended to the decedent's collateral relations who were of the blood of the first purchaser. (1 Jones' Blackstone, p. 1007.) For example, using the names which Blackstone employs in his illustrations, George Stiles purchases land, which descends to his son, Geoffrey. Upon the death of Geoffrey, his son John succeeds. John dies without issue. John's paternal uncle, brother of Geoffrey, may succeed, since he is of the blood of George, first purchaser. But John's *501 uncle on the maternal side could not succeed, since not of the blood of George.
 The reason for the rule, according to Blackstone, was feudal, "that what was given to a man, for his personal service and personal merit, ought not to descend to any but the heirs of his person." (1 Jones' Blackstone, p. 1008.) It has been said of this explanation: "Attempts have been made to represent it as a specifically feudal rule, one which takes us back to a time when only the descendants of the original vassal could inherit; but such attempts seem to be unnecessary; a rule whose main effect is that of keeping a woman's land in her own family is not unnatural and may well be very ancient." (2 Pollock and Maitland, History of English Law (2d ed.) p. 300.)
 If a point was reached where it was impossible to trace descent back further, the law, as it developed, permitted descendants on both sides to succeed. For instance, if upon the death of John Stiles it was known that his grandfather George Stiles had inherited the property, but it could not be known whether George had inherited from his father, Walter Stiles, or his mother, Christian Smith, the law would admit the descendants of George Stiles either paternal or maternal in their due order to be heirs of John Stiles. (1 Jones' Blackstone, p. 1010.) But while permitting the kindred of the decedent on both sides to succeed, the common law confined succession to those who were of the whole blood of the decedent. According to Blackstone, this was because there was a greater probability, although not a certainty, that collateral relatives of the decedent would be of the blood of the first purchaser if his whole blood relatives. "... The whole brother of John Stiles is sure to be descended from that unknown ancestor; his half brother has only an even chance, for half John's ancestors are not his. So, in the second degree, John's uncle of the whole blood has an even chance; but the chances are three to one against his uncle of the half blood, for three- fourths of John's ancestors are not his." (I Jones' Blackstone, p. 1018.)
 The rule limiting descent to whole blood kindred of the decedent was not, however, confined to cases where it was impossible to trace descent, but was applied where the first purchaser was known and the collateral relative of the half blood was known to be of the blood of such purchaser. That *502 is, if John Stiles had a half brother, born of his father but of a different mother, John's half brother could not inherit from John's estate which was known to have descended to John from the common father. The estate would pass to more remote collaterals, in default of which it would escheat, rather than pass to John's half brother. (1 Cooley's Blackstone (4th ed.) pp. 615, 618; 1 Jones' Blackstone, pp. 1014, 1019.) As applied to half blood relatives of the decedent known to be of the blood of the first purchaser this canon of descent is not based upon reason and was in fact condemned by Blackstone. (1 Jones' Blackstone, p. 1019.)
 Pollock and Maitland say of the rule excluding half bloods from all right of inheritance as collateral kindred: "... we strongly suspect that the rule that was ultimately established had its origin in a few precedents. About such a matter it is desirable that there shall be a clear rule; the import of the rule is of no great moment. Our rule was one eminently favourable to the king; it gave him escheats; we are not sure that any profounder explanation of it would be true." (2 History of English Law (2d ed.), supra, p. 305.)
 The rule excluding half bloods has been modified in England. (16 Am.Jur. 838.) In this country a number of states have statutes derived from the common law which provide for descent of ancestral property among those who are of the blood of the ancestor from whom the property came to the decedent. (4 Tiffany, Real Property (3d ed.), p. 386; 16 Am.Jur. 836; 141 A.L.R. 976.) Under such statutes succession is by those heirs of decedent who are of the blood of the ancestor from whom the estate passed immediately to the intestate, rather than of the blood of a more remote "first purchaser." (16 Am.Jur. 839; 4 Tiffany, supra, p. 387.) Various restrictions are also made by statutes in this country on inheritance by kindred of the half blood. (4 Tiffany, Real Property, supra, p. 383; 16 Am.Jur. 833.) Section 254, Probate Code, combines features of both doctrines.
 [1] The common law rule excluded half bloods entirely from inheriting real property. Section 254 only excludes them from succeeding to property which came to the decedent by descent, devise or gift from an ancestor where they are not of the blood of such ancestor. Where the half blood kin are of the blood of the ancestor from whom the estate came to the decedent, they share in it. There is no uncertainty in the meaning of section 254 in this particular. Under *503 the section the paternal half blood cousins of Katherine Ryan are entitled to share in property which came to her from her father equally with paternal whole blood cousins. The disputed question is as to the right of the paternal half blood cousins to share in property which came to Katherine Ryan from her mother, and as to the right of maternal half blood cousins to share in property which came to her from her father.
 [2] Under the common law full blood kindred were excluded where not of the blood of the first purchaser from whom the decedent derived the estate. In this state a general rule limiting descent to those who in fact or fiction are of the blood of the first purchaser or of the decedent's immediate ancestor has never obtained. In In re Pearsons, 110 Cal. 524 [42 P. 960], the decedent left as his heirs aunts and uncles, all of the whole blood, both on the paternal and maternal sides. The court upheld the contention of appellants, maternal aunts and uncles, that they could not be excluded from property which came to the decedent from his father, which property constituted the larger part of his estate. The court held that the exclusionary provision of section 254 applied only to kindred of the half blood. That section commences: "Kindred of the half blood inherit equally with those of the whole blood." If the section had stopped there, kindred of the half blood would have been in exactly the same position as those of the whole blood, but the section continues with the "unless" clause. The court held that such clause made an exception to the rule that kindred of the half blood inherit equally with those of the whole, and as an exception to that rule it applied only to kindred of the half blood, who were excluded if not of the blood of the ancestor from whom the property came to the decedent. This means, as applied to the instant case, that appellant Elizabeth Leary, cousin of the whole blood on the maternal side, is not to be excluded from property which came to decedent from her father, although she is a maternal cousin, nor are the other appellants, whole blood paternal cousins, to be excluded from property which came to decedent from her mother. The parties concede this to be the law.
 [3] A rule excluding half bloods not of the blood of the ancestor from whom the decedent derived estate, while permitting whole blood relatives not of the blood of the ancestor *504 to participate is without reason. Why should Elizabeth Leary, full blood maternal cousin, share in estate which came to decedent from her father, while half blood maternal cousins are excluded? Elizabeth Leary, equally with the half blood maternal cousins, is not of the blood of the decedent's father. Chancellor Kent's comment is that the laws of this country in respect to inheritance by the half blood seem to have been the result of accident or caprice, rather than the dictate of principle. (4 Kent's Commentaries, 406, as quoted 61 Am. Dec. 656.)
 Respondents' contention is that in the particular circumstances of this case section 254 does not exclude half blood cousins not of the blood of the ancestor from sharing in ancestral property. To develop the argument it is pertinent to quote section 254 again: "Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are." (Italics added.)
 The italicized words were added when the Probate Code was adopted in 1931. Respondents rely on them and on a line of cases decided before the amendment for the proposition that heirs of the half blood not of the blood of the ancestor are excluded only in favor of heirs of the whole blood who are of the blood of the ancestor. (Estate of Sayles, 215 Cal. 207 [8 P.2d 1009]; Estate of Edwards, 202 Cal. 130 [259 P. 440]; Estate of Belshaw, 190 Cal. 278 [212 P. 13]; Estate of Smith, 131 Cal. 433 [63 P. 729, 82 Am.St.Rep. 358]; Estate of Warnock, 36 Cal.App.2d 464 [97 P.2d 831].) In view of the plain import of section 254, paternal half bloods cannot be excluded from sharing in property which came to the intestate from her father, and under the decision in the Pearsons case, supra, the maternal full bloods cannot be excluded from paternal ancestral property herein, but must receive equal shares with the paternal full bloods. This means, in respondents' analysis, that if maternal half bloods are excluded from paternal ancestral property, while maternal whole bloods and paternal half bloods share it with paternal whole bloods, the exclusion of maternal half bloods takes place not only in favor of paternal whole bloods, but *505 also in favor of the single maternal cousin of the full blood and the paternal cousins of the half blood. Since the maternal half bloods in the circumstances cannot be excluded from paternal ancestral property "in favor of" paternal full bloods only, they cannot be excluded at all in this case, in respondents' view. The result, according to respondents, is that all cousins of decedent share equally.
 Acceptance of respondents' view would involve these consequences. If decedent Katherine Ryan left surviving her maternal cousins of the half blood and paternal cousins of the whole blood, the maternal half blood cousins would be excluded from paternal ancestral property. But if she left surviving her maternal cousins of the half blood and paternal cousins of the half blood, or paternal cousins of both the whole and half blood, all would share equally in paternal ancestral property, for the exclusion of the maternal half bloods, in respondents' view, can take place only in favor of paternal whole bloods. Similarly, if she left surviving maternal cousins of the whole blood and of the half blood and paternal cousins of the whole blood, all would share equally in paternal ancestral property, for the maternal whole blood cannot be excluded under the rule of the Pearsons case, and their inclusion would result in excluding maternal half bloods in favor of others than paternal full bloods. Although a rule excluding half bloods not of the blood of the ancestor while permitting whole bloods not of the blood to share in ancestral property is unreasonable, we are of the view that the application of section 254 should not be limited by interpreting it in a manner which will give rise to further purposeless distinctions, such as those which result from respondents' analysis. The remedy is with the Legislature.
 The first fallacy in respondents' argument is their premise that relatives of the half blood not of the blood of the ancestor are excluded only in favor of whole blood relatives who are of the blood of the ancestor. The cases which respondents cite, when read in the light of their facts, cannot be accepted as authority for respondents' premise. (Estate of Sayles, supra; Estate of Belshaw, supra; Estate of Edwards, supra; Estate of Smith, supra; Estate of Warnock, supra.) The true rule, before as well as after the amendment of 1931, is that half blood kindred not of the blood of the ancestor are excluded in favor of both whole and half blood kindred who *506 are of the blood of the ancestor. It was held in Estate of Sayles, supra, that the amendment did not change the meaning of the section, but merely clarified it.
 The fact that in the present case the exclusion of the maternal half blood cousins from paternal ancestral property will operate also in favor of the maternal full blood cousin, Elizabeth Leary, does not mean that the exclusionary provision becomes a nullity. The exclusion of maternal half bloods, as directed by the section, must be given effect notwithstanding its result is to favor also the maternal full blood cousin. The relatives of the blood of the ancestor are favored thereby, although less favored than if the maternal whole blood cousin also could be excluded. She cannot be excluded because her rights as an heir are fixed by section 226, Probate Code, and do not depend on the origin of the estate. That is, section 254 requires that paternal cousins, both whole blood and half blood, be favored as to paternal ancestral property where there are half blood cousins not of the blood of the ancestor. Section 226 demands that they should not be favored at the expense of the maternal whole blood cousin, who under that section is entitled to inherit without regard to ancestral origin of property. The same analysis applies to the paternal whole blood cousins sharing in maternal ancestral property.
 The statement is made above that respondents are not correct in their premise that half blood relatives not of the blood of the ancestor may be excluded only in favor of whole blood relatives of the blood of the ancestor. In the cited cases either there was not a relative of the blood of the ancestor, or there was a whole blood relative of the blood of the ancestor who was related to the decedent in a more remote degree than the half blood relative. For example, in Estate of Sayles, supra, a first cousin of the decedent of the blood of the ancestor claimed to be her heir to the exclusion of half-brothers and half-sisters not of the blood of the ancestor. It is held in this line of cases that the half blood relative succeeds, to the exclusion of the more remote whole blood relative, since the section reads: "Kindred of the half blood inherit equally with those of the whole blood in the same degree ..." None of the cases involved a question of succession as between maternal and paternal relatives in the same degree. Since the contending relatives were not related in the same degree, it was not necessary to the decisions to declare *507 that when the half bloods and the full bloods are related to the decedent in the same degree, then half bloods not of the blood of the ancestor are excluded only in favor of whole bloods of the same degree who are of the blood of the ancestor. In such cases as Estate of Sayles, supra, and Estate of Warnock, supra, the kindred of the blood of the ancestor all happened to be of the whole blood, which may account for the statements made in the opinions. The weakness of a rule excluding half bloods not of the blood of the ancestor only in favor of whole blood relatives of the blood of the ancestor is that it implies that half bloods of the blood of the ancestor are excluded, contrary to the plain terms of section 254.
 In the basic case, Estate of Smith, supra, the decedent left paternal ancestral property. She was survived by her husband and two half sisters on her mother's side. Under section 1386(2), Civil Code, one-half of the property would go to the surviving husband, one-half to the sisters. The court rejected the contention that since the sisters were not of the blood of the decedent's father, they were not entitled to succeed. It said: "And nothing seems plainer to us than that under this statute the half blood are only excluded when there are others in the same statutory class who are to be preferred by reason of being of the blood of the ancestor from whom the estate came to the intestate." Note that the court did not say of the whole blood of decedent.
 In Estate of Belshaw, supra, where the appellants were whole blood relatives of the decedent and of the blood of the ancestor, but more remote in degree than a half blood relative not of the blood of the ancestor, the court stated the contention of respondent as follows: "Respondent's position is that the second clause (of section 254) is operative only when there are kindred of the whole blood of the same degree as the kindred of the half blood and that kindred of the half blood inherit such property in preference to those of the whole blood of more remote degree." (Italics added.) The court held in accord with the last portion of this contention, but it was not necessary for the court to decide, and we find no statement intimating, that half blood relatives not of the blood of the ancestor could be excluded only in favor of whole blood relatives of the blood of the ancestor.
 The holding herein that half blood cousins not of the blood of the ancestor are excluded under section 254 in favor of *508 both whole and half blood cousins in the same degree who are of the blood of the ancestor, does not conflict with Estate of Edwards, supra, but is entirely consistent therewith. In that case, unlike the present, there were no heirs, either of the whole or half blood, who were of the blood of the ancestor. There were only whole and half blood heirs who were not of the blood of the ancestor. The exclusion of half blood kindred not of the blood of the ancestor is to take place only when there are kindred of the blood of the ancestor to be favored thereby. Where none, as in the Edwards case, it is equitable and in accordance with section 254 that whole and half blood relatives of the decedent, none of whom are of the blood of the ancestor, should be on a parity.
 The problem is one of construction of the words "in favor of those who are." If these words are not given the construction here declared the alternative is to apply them to those of the half blood who are of the blood of the ancestor. In re Pearsons, supra, holds that the phrase "all those who are not of the blood of the ancestor" means all those half bloods who are not of the blood of the ancestor. The word "those" appearing a third time in the section as it now stands must mean either all those who are of the blood of the ancestor, whether of the half blood or whole blood of the decedent, as we have held, or it must have the same meaning as the second "those." There is no possible basis for construing the concluding phrase, "those who are," as referring only to those whole bloods who are of the blood of the ancestor. Confining it to half bloods of the blood of the ancestor would have this consequence. Only when there were half bloods of the blood of the ancestor would the exclusion operate. If there was only a whole blood relative of the blood of the ancestor, the half blood in the same degree not of the blood of the ancestor would not be excluded. This would be a distinction without reason and is not compelled by the section.
 Amici curiae urge that on the facts of this case maternal whole blood cousins, as well as maternal half blood cousins, should be excluded from paternal ancestral property; that paternal cousins succeed to paternal ancestral property; maternal cousins to maternal property. In the Pearsons case, supra, there were aunts and uncles of the decedent, both paternal and maternal, all of the whole blood. It was held that all shared equally in ancestral property. Amici curiae *509 contend that although the Pearsons case was correctly decided under section 1394, Civil Code (now 254, Prob. Code), a different rule would apply had there been a half blood relative. Had there been a maternal uncle of the half blood, for instance, the maternal aunts and uncles would be excluded from paternal ancestral property, in the analysis of amici curiae. Thus amici curiae contend for an extension to whole blood kindred in certain circumstances of the rule of descent based on origin of property. The extension of the rule in the analysis of amici curiae is to depend on the irrelevant circumstance of whether there are half blood, as well as whole blood, kindred.
 This construction cannot be accepted. It is based on a theory that if the phrase "those who are," concluding section 254, refers to all those who are of the blood of the ancestor, both half blood and whole blood of the decedent, then the preceding "those" must have the same reference. This by necessary implication changes the rule of the Pearson case, which held that the phrase "all those who are not" appearing in the section refers to half blood only and excludes only them. The limitation which amici curiae place on their construction excluding whole bloods--that it should apply only where there is a half blood relative--finds no justification in the language of the section.
 We conclude that the maternal half blood cousins are excluded from paternal ancestral property, which is to be divided equally between the four cousins of the whole blood and the paternal cousins of the half blood; that the paternal cousins of the half blood are excluded from maternal ancestral property, which is to be distributed to the four full blood cousins and the maternal half blood cousins.
 [4] Respondents further contend that if it be conceded that maternal half blood cousins are excluded from paternal ancestral property under section 254, and paternal half bloods from maternal property, it does not appear from the bill of exceptions that any of the property of the decedent herein is ancestral within the meaning of the section. Respondents contend that section 254 applies only to real property, and that it does not apply unless the identical property which came to the decedent from the ancestor constitutes part of the estate of the decedent.
 The bill of exceptions shows the following: *510
 "That during the hearing one Kenneth D. Sevier was duly sworn, examined and testified that part of the estate, of which deceased died possessed was received by said deceased, by descent, devise or gift, from her father, part from her mother."
 "Whereupon the appellants and their attorneys, requested the said Court to receive testimony showing the ancestral origin of the estate of said Katherine Ryan, deceased, but the Court refused to receive further evidence touching the class or character of the funds or property belonging to the estate of said deceased, to which ruling the said appellants, the Scully heirs, and others, then and there excepted."
 Observe that the recital as to the testimony of the witness is in the language of the code section. If, as contended by respondents, the section applies only to real property, the testimony of the witness in the same words has the same meaning. If the word "devise" in the code section shows that it refers to real property only, it has the same connotation when used by the witness in testimony adduced with reference to that section.
 [5a] Since the question whether the section applies only to identical real property received from an ancestor will necessarily be involved upon further proceedings had pursuant to reversal of the order herein, it should be determined.
 In Estate of Warnock, supra, the court assumed without discussion that the section would apply to corporate stock, and considered whether it would apply to stock purchased with the proceeds from the sale of the stock received by the decedent under the will of his aunt. It was there held (p. 467) that the "inheritance, though changed in form, never lost its identity and therefore still retained its ancestral character." The holding was not necessary to the decision, since the section was held inapplicable because the half blood and whole blood kindred were not of the same degree.
 The court relied on the settled interpretation of sections 228 and 229, Probate Code, and the similar provisions in section 1386, Civil Code, which preceded the Probate Code. Those sections provide for division of community property between relatives of the decedent who dies intestate and relatives of the predeceased spouse, and for succession by relatives of the predeceased spouse where the property of the decedent had been the separate property of the predeceased spouse. (Estate of Putnam, 219 Cal. 608 [28 P.2d 27]; *511 Estate of Brady, 171 Cal. 1 [151 P. 275].) However, there are differences in the wording of these sections and section 254, to be noticed later.
 Respondents' argument that section 254 applies to real property only rests in part on its wording and in part on historical considerations. The common law canon limiting descent to those of the blood of the first purchaser applied only to real property. Personal property passed to the administrator, who, "usually, whether rightly or wrongly, appropriated to his own use all the surplus after payment of debts, until by statute it was provided that such surplus should be distributed, in a certain manner, to the widow and children, or, in default of children, to the next of kin." (4 Tiffany, Real Property (3d ed.), p. 374.) There seems to have been some uncertainty whether the exclusion of the half blood applied to personal property, but it was settled in England by 1690 that it did not. (Ector v. Grant, 112 Ga. 557 [37 S.E. 984, 53 L.R.A. 723]; 16 Am.Jur. 833-843; 42 Yale L.J., 102.) In this country, "generally the statutes relating to the descent of ancestral estates do not cover personal property." (16 Am.Jur. 843; L.R.A. 1916C, 935.) They have been held to apply to personalty, however. (Rountree v. Pursell, 11 Ind.App. 522 [39 N.E. 747].)
 Respondents find in the use of the words "inherit," "inheritance" and "devise" indication that section 254 applies only to real property. At common law "inherit" and "inheritance" related to real property which descended to heirs. Under our system personal property also passes to those who succeed to real property, that is, to heirs, rather than to the personal representative. Use of these words alone would not add much weight to the argument, but their use with "devise" gives strength to respondents' contention. The word "devise" has been held to apply to personal property when necessary to carry out the intent of a testator (see Black's Law Dictionary (3d ed.), p. 573), and was construed as applicable to personalty in the ancestral estate statute involved in Rountree v. Pursell, supra. (In Childs v. Gross, 41 Cal.App.2d 680 [107 P.2d 424], the word "devise" as the last word of section 125, Probate Code, was held to include personal property. In Estate of Ross, 140 Cal. 282 [73 P. 976], it was held applicable to real property only as used in section 1310, Civil Code, which was later amended to include *512 "bequest.") The word "devise" has not acquired a broadened meaning applicable to personalty to the same extent as the word "inherit" and "inheritance." The corresponding word for such property is "bequest." Sections 228 and 229, Probate Code, construed in Estate of Putnam, supra, and Estate of Brady, supra, include the word "bequest" in the phrase "by gift, descent, devise or bequest." The provision for succession to property which had been community property of the decedent and a predeceased spouse formerly did not include the phrase "by gift, descent, devise or bequest," and hence at all times has been distinguishable in its wording from section 254.
 Other sections of the code regulating succession apply alike to real and personal property. But this does not mean that section 254 could not be confined to realty if the language of the section, construed in the light of its historical background, impels such conclusion. The effect of confining section 254, which is a limitation on succession by kindred of the half blood, to real property, means that as to personal property they inherit equally with kindred of the whole blood. In the absence of an express limitation on succession by kindred of the half blood it is generally held in this country that they have the same rights as those of the whole blood. (Estate of Lynch, 132 Cal. 214 [64 P. 284]; 4 Tiffany, Real Property (3d ed.), p. 383.)
 The doctrine of ancestral estates, whether applied to kindred of the whole or half blood, is being looked on with increasing disfavor in the states where it still exists. (See article, W. W. Ferrier, Jr., Rules of Descent Under Prob. Code, 228 and 229, and Proposed Amendments, 25 Cal.L.Rev. 261, at 280, citing supporting references.) "A discrimination against the half blood is the exception, and is not to be extended beyond the obvious intent." (Estate of Smith, supra, p. 436.) Furthermore, our particular statute, combining features of both doctrines, is objectionable in that it illogically excludes kindred of the half blood who are not of the blood of the ancestor, while permitting kindred of the whole blood who likewise are not of the blood of the ancestor to share. These considerations impel a conclusion that section 254 does not apply to personal property.
 From some of the cases cited it is quite clear that the word "devise" can be interpreted either to include personal property, or to apply solely to real property. [6] How it should *513 be interpreted in any particular statute depends upon the legislative intent, which, when not expressed, must be ascertained from all the circumstances. In attempting to ascertain such intent, the courts are permitted to consider the historical background of the statute, consequences that will flow from a particular interpretation and other factors. [5b] Considering these factors, we are inclined to the belief that as used in section 254 it was intended to be limited to real property. For the same reasons the word "gift," as used in the particular section, can have no broader significance than the word "devise."
 The question remains as to whether section 254 applies only to the identical real property which came to the decedent from his ancestor, and which remains part of his estate on his death. An attempt to trace property in changed form involves administrative difficulties of great complexity.
 The rule was well settled in England that a conveyance of real property destroyed its ancestral character, that property acquired with the proceeds from the sale of ancestral property was acquired by purchase and was not ancestral. The sale of ancestral property was described as breaking the descent by alienation. (12 Columb.L.Rev. 625.) The proposition that the ancestral character of property is destroyed by its alienation is the law in this country today. (4 Tiffany, Real Property (3d ed.), p. 389; 16 Am.Jur. 845; L.R.A. 1916C, 913.) Omitting for the moment the California cases of Estate of Putnam, supra, Estate of Brady, supra, and Estate of Warnock, supra, counsel have cited no decision where an ancestral estate statute has been applied where the identical property did not remain part of the decedent's estate, and our research, so far as it has gone, has disclosed none, except cases involving partition in kind, and the sale of property of minors and insane persons under guardianship. (Notes, 103 A.L.R. 233; L.R.A. 1916C, 910.)
 In Rountree v. Pursell, supra, 753, where the particular statute involved was held to apply to personalty as well as realty, it was held nevertheless that the property must remain in specie: "It must be the same thing that came from the ancestor; the same parcel of real estate; the same article of personal property."
 The above conclusions are strengthened by the fact that the exclusion of half blood kindred takes place only on the *514 condition that the property "came to the intestate by descent, devise or gift from some one of his ancestors." The word "one" indicates that the exclusion is intended to operate only as to specific property which came from a specific ancestor and remained vested in the heir in kind until the time of his death, intestate.
 We are of the view that the fact that section 254 is derived more particularly from the common law doctrine of ancestral estates, with a well defined meaning and historical background, justifies confining it to the identical property received from the ancestor, although sections 228 and 229, Probate Code, apply to property in changed form, under Estate of Putnam, supra, and Estate of Brady, supra. The dictum in Estate of Warnock, supra, should not be the law.
 The order is reversed.
 Gibson, C.J., Edmonds, J., and Traynor, J., concurred.
 CARTER, J.,
 Concurring and dissenting.
 I concur in the judgment of reversal, although I seriously doubt that the Legislature intended when it enacted section 254 of the Probate Code that kindred of the half blood should be excluded from an inheritance because they are not of the blood of the ancestor from whom the estate descended, while kindred of the whole blood likewise not of the blood of such ancestor are permitted to participate in such estate. But I can see no escape from the conclusion that section 226 of the Probate Code controls the descent of property insofar as kindred of the whole blood are concerned, and the mere circumstance of the existence of kindred of the half blood in the same degree who are excluded from the inheritance by the provisions of section 254 of the Probate Code should not operate to deprive kindred of the whole blood from succeeding to their inheritance under the provisions of section 226 of the Probate Code. I believe, however, that the inequities resulting from the construction placed upon section 254 of the Probate Code by the majority opinion should be corrected by the Legislature by appropriate amendment to said section.
 I do not, however, agree with that portion of the majority opinion which holds that the words "inheritance came to the intestate by descent, devise or gift of some one of his ancestors" as used in section 254 of the Probate Code embrace only real property and only the specific real property so received. *515 Those words cannot be said to have any such restricted meaning. The thing which comes to the intestate is described as the "inheritance." Inheritance is used as synonymous with succession in section 250 of the Probate Code, and the provisions on succession treat real and personal property the same. The word inheritance as used in the law of descent applies to both personal property and real property. (In re Turner's Estate, 191 Wash. 145 [70 P.2d 1059].) The common law definition of inheritance which limited it to real property was founded upon the rule that title to real property passed on death to the heirs while title to personal property passed to the personal representative. (Center v. Kramer, 112 Ohio St. 269 [147 N.E. 602].) But in California title to both real and personal property vests in the heirs or beneficiaries under the will upon death. (Prob. Code, 300.) By virtue of the same rule, property coming by "descent" embraces both real and personal property. Property comes by descent when it is acquired by an heir by virtue of the intestacy of the decedent, and inasmuch as title to both kinds of property passes to the heirs and none to the personal representative, property which comes by descent is both real and personal. (See Hudnall v. Ham, 172 Ill. 76 [49 N.E. 985].)
 In a case involving the right of inheritance between whole bloods and half bloods under a statute, it has been squarely held that the words "gift, devise or descent" include both real and personal property. (In re Hullett's Estate, 46 Ind. App. 412 [89 N.E. 509]; Rountree v. Pursell, 11 Ind. App. 522 [39 N.E. 747].)
 Curtis, J., concurred.