# Sturgeon v. Hustead.

*Intestate law—Decedents' estates—Descents.*

Where a son who has derived real estate by descent from his mother dies without leaving issue, or brothers or sisters of the whole blood or their descendants, but leaving his father to survive him, the father not being of the blood of the ancestor from whom the estate is derived, does not take, but the estate vests in the next of kin of the son on the mother's side ascertained by the rules of the civil and not of the canon law. In such a case a great-grandfather on the mother's side would take to the exclusion of great uncles and great aunts.

Argued May 7, 1900. Appeal, No. 113, Jan. T., 1900, by defendant, from judgment of C. P. Fayette Co., March T., 1898, No. 381, on verdict for plaintiff in case of Daniel Sturgeon and Walter W. Laughead v. James M. Hustead. Before GREEN, C. J., McCOLLUM, DEAN, FELL and BROWN, JJ. Affirmed.

Ejectment for land in Georges township. Before TAYLOR, J., of the 27th judicial district, specially presiding.

The facts appear by the charge of the court which was as follows:

There are two separate actions of ejectment brought here

both of which you are to determine by agreement of counsel, the first, wherein Daniel Sturgeon and Walter W. Laughead are plaintiffs against James M. Hustead at No. 381, March term, 1898, whereby they seek to recover an undivided interest in about 120 acres of land situate in Georges township, Fayette county; and also, the same plaintiffs against H. C. Frick Coke Company, a corporation, at No. 382, March term, 1898, whereby the plaintiffs seek to recover an undivided interest in the Connellsville coking vein of coal which underlies this tract of land.

Now, gentlemen of the jury, as these cases have developed upon the testimony, it will not be necessary for you to consider this testimony as we intend to direct a verdict here which you will return after we have concluded our remarks and answered the points which counsel on both sides have submitted. It strikes the court, that, while an action of ejectment is an equitable action, the parties under the testimony introduced upon the one side and the other, rely principally upon what is called the legal or paper title, and, in disposing of these cases we will dispose of them along the line of the legal principles that we think apply under the law and the decisions to the question raised here; and that is relating to descent. What has been said by counsel that this would be a hardship and that, if we had any doubt as to how we ought to decide the case, we should settle the doubt by applying the equities in the case, we think hardly applies to these cases. There has been eliminated from the cases any defense, while they introduced some evidence along that line, of adverse possession, or any equitable defense, which makes, particularly an equitable defense in an action of ejectment, an equitable action. So I say that the parties here are depending on the one side and the other upon their legal titles, or paper titles, which they have to the contested interest in this tract of land and in the coal.

It appears, gentlemen of the jury, that many years ago one David Smith owned this tract of land, and that it was sold by him, or by his administrators at his death, to Joshua Davis, and that Joshua Davis thereby became the owner, by purchase, as it would appear, of this 120 acres of land, and died intestate seized of the same on February 20, 1816, leaving to survive him, Catherine Davis, his widow, two daughters, Kezia Davis and Sarah Davis, his father, James Davis, and three brothers and three sisters.

On the death of Joshua Davis, the title to his real estate vested in his two daughters, Kezia and Sarah, subject to the life estate of the widow. Kezia Davis having died in 1833, unmarried and without issue, her interest became vested in her sister, Sarah. Afterwards Sarah Davis married Isaiah Custer on February 11, 1840, and had a son born on May 27, 1841, named James Davis Custer, who died August 18, 1841, unmarried and without issue. Sarah Davis Custer, the child's mother, died June 2, 1841, leaving to survive her her husband, Isaiah Custer, and her child, James Davis Custer. On the death of Sarah Davis Custer, the title to this land vested in her child, James Davis Custer, subject to the life estates of the widow of Joshua Davis and the surviving husband of Sarah Davis Custer.

All parties agree, at least it would seem, that the title had vested in James Davis Custer, on his mother's death on June 2, 1841.

The important question now is, in whom did the title vest after the death of James Davis Custer on August 18, 1841? And that is the question of vital interest in this case.

James Davis Custer died without leaving any issue, or brothers or sisters of the whole blood, or their descendants, but he left his father surviving, and under section 5 of the Intestate Act of April 8, 1833, P. L. 318, the estate would have vested in him if he were not excluded by section 9 of the act, which provides: "That no person who is not of the blood of the ancestors or other relations from whom any real estate descended or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein," etc.

This being a descended estate, and the father not being of the blood of the ancestor from whom the estate descended, he is not capable of taking any estate of inheritance in this land.

Under section 6 of the intestate act, the father and mother must be competent to take an estate of inheritance therein. The father here is not competent to take an estate of inheritance in the land, not being of the blood of the ancestor from whom it descended; and we cite McWilliams et al. v. Ross, 46 Pa. 369, and Intestate Act of April 8, 1833, P. L. 318.

Section 7 provides: "In default of all persons hereinbefore

described, the real and personal estate of the intestate shall descend to and be distributed among the next of kin of such intestate."

In the present case there was a default of all persons described in the sections preceding section 7, competent to take an estate of inheritance in this land, consequently the estate must be distributed among the next of kin of the intestate, James Davis Custer, subject to the condition, however, in section 9, that they must be of the blood of the first purchaser.

"The case provided for by section 7 is in default of issue, and of full brothers and sisters and their descendants, and of father and mother competent to take an estate of inheritance; then it shall go to the next of kin generally, if an original estate, and to the next of kin of the line of the first purchaser if a descended estate;" and we quote: McWilliams et al. v. Ross, supra.

Who then is contemplated by section 9 as being the "ancestors or other relations?"

In a case of pure descent in order to discover who those "ancestors or other relations" are, it is necessary to ascend to the first purchaser, to him who first acquired the estate to his family. He is the perquisitor, and from him the inheritable blood is to be derived: Lewis v. Gorman, 5 Pa. 166, and cases cited; Hart's Appeal, 8 Pa. 36; Parr v. Bankhart, 22 Pa. 297; 4 Kent's Com. p. 406.

The next question presented is, who are the next of kin of the intestate, James Davis Custer, of the blood of the ancestor?

Under the intestate act of 1833, the next of kin are to be ascertained by the rules of the civil and not of the canon law: McDowell v. Addams et al., 45 Pa. 430.

By the civil law, the computation is from the intestate up to the common ancestor of the intestate and the person whose relationship is sought after, and then down to that person, reckoning a degree for each person, both ascending and descending. By this mode the intestate is taken as the terminus a quo, and the propinquity to him of any collateral relative is determined by the sum of the degrees in both lines to the common ancestor: McDowell v. Addams et al., supra; 4 Kent's Com. p. 413.

Apply this rule to the case in hand: From the intestate, James Davis Custer, to his mother, Sarah, is one degree; from

Sarah, the mother, to her father, Joshua Davis, is the second degree; from Joshua Davis to his father, James Davis, is the third degree; and from James Davis to his sons and daughters is the fourth degree. And thus it appears that James Davis, the great-grandfather of the intestate, is the next of kin of the intestate, and entitled to this estate, because his relationship to the intestate is one degree nearer than that of the great-uncles and great-aunts of the intestate, namely, the brothers and sisters of Joshua Davis, the perquisitor of the estate.

Having traced the title to James Davis, the great-grandfather of the intestate, on his death, September 10, 1850, intestate, the estate descended under the intestate act of 1833, to his children and their descendants, the issue or descendants of any deceased child taking by representation the parent's share. This being the case, the issue or descendants of Kezia Smith and Hannah Nixon, who died prior to the death of their father, James Davis, would be entitled to their parent's share of this estate.

The issue of Kezia Smith would be entitled to the one sixth of the estate, the issue of Hannah Nixon would be entitled to one sixth, and the three sons, David, Zachariah and Samuel Davis, and the daughter, Mary Miller, living at the time of the death of their father, James Davis, would each be entitled to one sixth of the estate.

From the foregoing conclusions it is manifest that the plaintiffs, representing part of the interests of the descendants of Kezia Smith and Hannah Nixon, are entitled to recover whatever shares they have the legal titles thereto, and that, if the points of the plaintiff be correctly computed, would be $\frac{10}{42}\frac{13}{12}$ of the coal described in the writ, and the same of the land.

Gentlemen of the jury, we will direct a verdict to be entered and the prothonotary to take your verdict for the land and coal in dispute described in the writ in that amount in each case.

Verdict and judgment for plaintiffs. Defendants appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*Edwin S. Craig*, with him *R. H. Lindsey* and *George D. Howell*, for appellant.—The intestate act of 1833 does not ex-

pressly provide for lineal ascent of land beyond the father and mother of the intestate.

The act of 1833 reduces the common-law heir's share of the inheritance, where he is one of a class of kindred, of equal degree of consanguinity to the intestate, but recognizes his right to inherit and does not exclude him therefrom except only in favor of certain expressly enumerated classes of statutory heirs, to wit: the intestate's father and mother under section 5, and his brothers and sisters of the half blood, and their issue, under section 6, subject, however, to the restriction in section 9.

In the 7th section of the act, the words "descend-to" should receive their technical common-law construction, and are to be referred to real estate, while the words "be distributed among" are to be referred exclusively to personal estate.

In the 7th section of the act the words, "next of kin" should be construed according to the nature of the property to be transmitted, and differently as to real and personal estate; as to realty, signifying next of kin competent to take an estate of inheritance therein from the perquisitor; but, as to personalty, signifying the nearest kindred, generally, to the intestate, without any distinction of blood: Johnson v. Haines, 4 Dallas, 64; Preston v. Hoskins, 2 Yeates, 545; Cresoe v. Laidley, 2 Binn. 279; Bevan v. Taylor, 7 S. & R. 397; Clayton v. Clayton, 3 Binn. 488; Bradford v. Bradford, 6 Wharton, 244; Bender v. Dietrick, 7 W. & S. 284; Rupp v. Eberly, 79 Pa. 141; McDowell v. Addams, 45 Pa. 430; 2 Blackstone's Com. 208; Jenks v. Backhouse, 1 Binn. 96; Rigler v. Cloud, 14 Pa. 361; Cochran v. O'Hern, 4 W. & S. 95; Young v. McIntyre, 6 W. N. C. 252; McMasters v. Negley, 152 Pa. 303; Shippen v. Izard, 1 S. & R. 222; Simpson v. Kelso, 8 Watts, 247–252; Roberts's Appeal, 39 Pa. 417; Broad Top Coal & Iron Co. v. Riddlesburg Coal & Iron Co., 65 Pa. 435; Baker v. Chalfant, 5 Wharton, 477.

As a consequence of our examination of the act of 1833, we hold that on the death of James Davis Custer in 1841, the fee of the land in dispute descended to his three great-uncles and one living great-aunt, and that the plaintiffs not being entitled to claim anything through or under the great-uncles and great-aunt, have no lawful title to any portion of the land described in the writs: Curren v. Taylor, 19 Ohio, 36; Bingham on Descent, pp. 1, 2.

If Joshua Davis had died either before or after the passage of the act of 1833, leaving no widow or lineal descendants, his estate in this land could not have passed to his father, James Davis in fee, as against his brothers and sisters; they would have succeeded to the fee, subject to a life estate in the father. As the father, James Davis, could not take an estate of inheritance in this land from his son, Joshua, the perquisitor, as against his own children, so, therefore, he could not take an estate of inheritance therein from his great-grandson, James Davis Custer, as against those children; and so James Davis Custer's next of kin, who were competent to inherit it from Joshua, to wit: Joshua's three brothers and one living sister succeeded to the estate, and their title is now vested in us: Baker v. Chalfant, 5 Wharton, 477; Hart's App., 8 Pa. 32; Fister's Est., 2 Woodward's Decisions, 323; Danner v. Shissler, 31 Pa. 289; May v. Espenshade, 1 Pearson, 139; Ranck's App., 113 Pa. 98; Parr v. Bankhart, 22 Pa. 291; Montgomery v. Petriken, 29 Pa. 118; Roberts's App., 39 Pa. 417; Eby's App., 50 Pa. 311; Kinney v. Glasgow, 53 Pa. 141; Davis's Est., 9 W. N. C. 479; Kiegel's App., 12 W. N. C. 179; Perot's App., 102 Pa. 235; Lynch v. Lynch, 132 Pa. 422; Henszey v. Gross, 185 Pa. 353.

*H. L. Robinson*, of *Robinson & W. S. McLean*, for appellees. —Though the intestate act of 1833 does not expressly provide for lineal ascent of lands beyond father and mother, by implication it does provide for such further ascent where such lineal ancestors are decedent's next of kin under the rules of the civil law.

The act, as to all estates capable of being conveyed or devised, does not recognize the right of the heir at common law to inherit as such in any case provided for by the act, but allows him to take only when the person who would have been such heir comes within the description of persons or classes entitled to take under some particular section of the act, and then only because he, as an individual, falls within the specified class.

The words " descend to " in the 7th section of the act should be construed in harmony with the evident intent and meaning of the act taken as a whole.

The words " next of kin " in said section should be con-

strued according to the ordinary legal acceptation of that term, subject to such modification as would evidently result from an application of the rules laid down in other sections of the act, and none other: Hood on Executors, 506.

By the rules of the civil law degrees of kinship re computed by continuing up from the propositus to the common ancestor and down to the person whose degree is sought to be ascertained. Hence, if living, the common ancestor is always nearer of kin than any of his descendants outside of the direct line of the propositus: McDowell v. Addams, 45 Pa. 430, Nichol v. Hall, 28 Pitts. L. Journal, 239; 4 Kent's Com. 405.

PER CURIAM, May 23, 1900:

We concur entirely with the views expressed by the learned court below in this case. We do not see how we can add anything to what has been so well said in the charge. It is practically a demonstration of the correctness of the conclusion reached, and we therefore affirm the judgment on the charge of the court.

Judgment affirmed.

