[Civ. No. 12331. First Dist., Div. Two. Apr. 7, 1943.]

Estate of COLEMAN HAINES KNIGHT, Deceased. MARY E. RENNERT et al., Respondents, v. BERTHA J. WILLIAMS WEST, Appellant.

Brandenburger & White for Appellant.

Heller, Ehrman, White & McAuliffe, Peter A. Breen and Molkenbuhr & Molkenbuhr for Respondents.

NOURSE, P. J.—This is an appeal from a decree establishing heirship and determining that respondents were the sole heirs of decedent.

The decedent died intestate in April, 1941. He was the son and last surviving descendant of Thomas Knight and Serena Haines Knight. Mary E. Rennert, Franklin Guy Miller, and Eugene Guy Miller were the only surviving children of Emma Haines, a sister of Serena Haines Knight, the mother of decedent. Jessie Haines De Mauriac and Frederick Haines were the only surviving children of Anthony Haines, a brother of Serena Haines Knight. Frederick Haines died pending the appeal and his interest is represented by his assignee. All the respondents are maternal cousins of the whole blood of decedent and related in the fourth degree. Coleman Knight and Anna Libby were the parents of Thomas Knight, the father of Coleman Haines Knight, decedent. Anna Libby later married Warner Williams and was the grandmother of Bertha J. Williams West, the appellant herein. As the grandchild of the second marriage of decedent's paternal grandmother, appellant was therefore a paternal cousin of the half blood of decedent and like respondents related to decedent by collateral consanguinity in the fourth degree.

To facilitate the disposition of the proceedings to determine heirship the parties stipulated to the facts, the relation of the respective parties, the character of the property of the estate, and the questions of law involved. Upon this

stipulation the trial court decreed that the respondents were the sole heirs and that appellant was not entitled to succeed to any portion of the estate.

The parties stipulated that the questions of law involved were whether the provisions of section 254 of the Probate Code excluded appellant from sharing with respondents in the distribution of the property of the estate, to wit:

"1. REAL PROPERTY: All of which was acquired by said Coleman Haines Knight, deceased, pursuant to Last Will and Testament from Serena Haines Knight, deceased, who had acquired said real property by deed of gift from Thomas Knight, deceased, the last purchaser thereof?

"2. PERSONAL PROPERTY:

"a. That portion thereof acquired by Coleman Haines Knight, deceased, by Last Will and Testament from Serena Haines Knight, deceased?

"b. That portion thereof which represents income from and the transmutations of such real property hereinabove referred to in subdivision '1' of this paragraph?

"c. That portion thereof which represents income from and the transmutations of such personal property hereinabove referred to in subdivision '2-a' of this paragraph?

"d. That portion thereof described in Exhibit 'B' attached hereto, which said Coleman Haines Knight acquired by gift from Serena Haines Knight?

"e. That portion thereof which represents income from and transmutations of said personal property described in said Exhibit 'B'."

It will not be necessary to give an extended discussion of all the questions of law presented to the trial court because, since the appeal was perfected, the Supreme Court determined some of them in *Estate of Ryan*, 21 Cal.2d 498 [133 P.2d 626]. For a better understanding of the controversy it is well at this point to quote the provisions of the code section: "Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are." Briefly then the question is to what extent does the section exclude one of the half blood from the right of inheritance in the several classes of property listed in the stipulation.

In the Ryan case the court held that the exclusion provision of the code section did not relate to personal property acquired by bequest or gift, that the use of the word "inheritance" indicated a legislative intent to confine the provisions to real property. In the same case it was held that the provisions of the code section should be confined to the identical real property, and hence it would not relate to the transmutations or income from or the proceeds of the real property. This decision sets at rest the issues presented here in the second question of the stipulation, and upon that decision alone, which is controlling upon us, we conclude that the appellant was entitled to succeed ratably to the portion of the estate consisting of personal property, and the income therefrom, coming to the intestate by either bequest or gift, in the transmutations of real property, and the income therefrom and transmutations thereof. In this connection it is proper to state that we refer to the "transmutations" of real and personal property in the same general way as the parties treat the subject in their briefs. Though they stipulated that succession to such "transmutations" was one of the issues involved the record does not contain any showing that any transmutations occurred. Whether the issue relates to sales made by the mother of decedent, to sales made in course of probate, or to sales made by order of court during the incompetency of the decedent does not appear. We are not disposed to discuss the rules relating to these various groups of "transmutations" as they are not argued by any of the parties.

There remains for consideration the single question whether the section relates to the real property which the parties agree came to the decedent by devise of his mother who acquired it "by deed of gift from Thomas Knight, deceased, the last purchaser thereof." Having thus stipulated as to the "last purchaser" as the only proof of the source of title the parties have presented the issue whether Thomas Knight, father of deceased, is to be deemed the "one of his ancestors" from whom the estate "came to the intestate," or since Thomas Knight had given the property to his wife, the mother of decedent, the latter should be deemed to be such "ancestor," since she was the one from whom the immediate transfer came to decedent. The reason for the controversy is that appellant is "of the blood" of Thomas Knight though kindred of the half blood of decedent, while respon-

dents are kindred of the full blood of decedent, but not "of the blood" of Thomas Knight. The appellant has narrowed the issues by the concession that she does not claim to succeed to the entire portion of the realty to the exclusion of the respondents, but that she is entitled "to share with the respondents" ratably since all are related to deceased in the same degree. The appellant also concedes that, in number, the authorities favor respondents, but she contends that those authorities which support her view are more in accord with the common law rule and are more clearly applicable to a reasonable interpretation of our own statutes.

We are in accord with the view of the appellant. The underlying principle of the doctrine of ancestral estates is that that which a man has earned by his own service should be kept in his family. (1 Jones' Blackstone, p. 1008.) Thus at common law it was the rule that on failure of lineal descendants the estate went to decedent's collateral relations who were of the blood of the first purchaser. (Id., p. 1007.) This common law rule was cited as the "fifth canon of descent" in *Chastain* v. *Larney,* 134 Okla. 127 [272 P. 471, 472], where the court, though rejecting it as inapplicable in that jurisdiction, stated as follows: "The heir must be of the blood of the ancestor who brought the estate into the family, or to be more specific, the ancestor who last acquired the estate by purchase, no matter how many intervening transfers of title by descent or by gift or by gratuitous devise from an ancestor there may have been."

Section 254 Probate Code was originally adopted in California at the first session of the Legislature in 1850 as section 4 of "An Act to Regulate Descents and Distributions." (Stats. 1850, p. 221.) In endeavoring to arrive at the intent of that early Legislature in first enacting this particular provision it is important to ascertain the general state of the law as embodied in the decisions of the courts of this country which before that date had construed statutes dealing with the descent of ancestral estates. It is significant that in 1850 the weight of authority was clearly in favor of the rule looking to the blood of the "last purchaser." In favor of such construction were decisions of the courts of Maryland, North Carolina and Pennsylvania. (*Stewart* v. *Evans,* (1810) 3 Harr.&J. (Md.) 287; *Stewart* v. *Jones,* (1836) 8 Gill.&J. (Md.) 1; *Wilkerson* v. *Bracken,* (1842) 24 N.C. 315; *Maffit* v. *Clark;* (1843) 6 Watts&S. (Pa.) 258; *Lewis* v. *Gorman,*

(1847) 5 Barr (Pa.) 164.) Taking the contrary view was a single decision of the United States Supreme Court construing a statute of Rhode Island. (*Gardner* v. *Collins*, (1829) 2 Pet. (U.S.) 58 [7 L.Ed. 347].) That this heresy from the common law on the part of the Supreme Court of the United States, which in 1850 stood alone against the prevailing weight of authority, has since become the fountain head of what is today the prevailing American rule, as noted in the dictum in *Estate of Ryan, supra* (21 Cal.2d at 502), is of little assistance in determining the intent of our Legislature in adopting in 1850 what is now section 254 Probate Code. At that time it seems more likely that the legislators would have accepted what was then the prevailing American view, rather than an isolated divergence from it. This conclusion is reinforced by the fact that, as noted in *Estate of Ryan, supra*, p. 514: ". . . section 254 is derived more particularly from the common law doctrine of ancestral estates, with a well defined meaning and historical background. . . . " Under that doctrine of ancestral estates, which must have been well known to the legislators of 1850 when Blackstone's Commentaries was the Bible of the American lawyer, the blood of the "last purchaser" and not that of the immediate ancestor was looked to in casting the descent. Natural justice is also better served by such construction of what is at best an illogical statute. If choice must be made between the blood of an ancestor by whose industry the property was acquired and that of one to whom it came by the accident of birth or marriage, such reason as can be attributed to a capricious statute favors the choice of the blood of the one whose industry brought the property into the family line. It is worthy of remark that in the three states the courts of which before 1850 had announced the "last purchaser" rule, that rule has never been departed from. (*Sturgeon* v. *Hustead,* (1900) 196 Pa. 148 [46 A. 377]; *Garner* v. *Wood,* (1889) 71 Md. 37 [17 A. 1031]; *Poisson* v. *Pettaway,* (1912) 159 N.C. 650 [75 P. 930].)

■ Sections 226 and 254 of the Probate Code are not out of harmony with the common law rule. Section 226 provides that "If the decedent leaves neither issue, spouse, parent, brother, sister, nor descendant of a deceased brother or sister, the estate goes to the next of kin in equal degree. . . . " Section 254 bases the exclusion of kindred of the half blood upon the contingency that the inheritance came to the intes-

tate from "some one of his ancestors." This language was emphasized in the Ryan case where, at page 514, the court said: "The word 'one' indicates that the exclusion is intended to operate only as to specific property which came from a specific ancestor and remained vested in the heir in kind until the time of his death, intestate." It would seem that this language is more particularly appropriate here where the question is the source of title rather than the character of the specific property. Manifestly both Thomas Knight and Serena Knight were each "one" of the ancestors of the decedent and the real property here involved concededly came to the intestate from both—first from Thomas to Serena, and then from Serena to the intestate. If the section had contained any language indicating an intention to limit the word ancestor to the immediate transferor to the intestate the controversy would be ended. But since the section admittedly relates to "ancestral estates" we must assume that the language was used in the light of the common law rule relating to the "last purchaser." The Supreme Court having held in the Ryan case that section 254 is an adoption of the common law rule of "ancestral estates" we conclude that the term "some one of his ancestors" used in that section is an adoption of the "fifth canon of descent" to wit: the ancestor "who brought the estate into the family."

For these reasons we conclude that since appellant is of the blood of the ancestor of the decedent who was the "last purchaser" she is not excluded from participating in the realty under section 254 of the Probate Code. The rights of the respondents under that particular section having been conceded we do not discuss or determine the application of the section to persons in their relation. But upon the case here made we hold that, the parties being "in the same degree of kindred to the decedent" they succeed to and share ratably in all the property of the estate under the provisions of section 226 of the Probate Code.

The decree is reversed.

Spence, J., and Dooling, J. pro tem., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 3, 1943. Carter, J., and Traynor, J., voted for a hearing.