[Civ. No. 700.   Fifth Dist.   Dec. 29, 1966.]

Estate of EVA M. DONOVAN, Deceased. LEOTTA M. HUBERTY, Petitioner and Respondent, v. GRACE McCUBBIN, as Administratrix etc., et al., Objectors and Appellants.

C. J. Goodell for Objectors and Appellants.

George A. Huberty, Adrien Hynes and Joseph W. Kiley for Petitioner and Respondent.

CONLEY, P. J.—Eva M. Donovan died intestate in San Andreas, California, on October 27, 1964. She was a resident of Calaveras County and left real property in San Andreas, as well as a substantial amount of personal property.

Grace McCubbin, a first cousin of decedent, was appointed and qualified as administratrix in due course. Thereafter, Leotta M. Huberty petitioned the court to determine heirship, alleging that there are 24 relatives in the fourth degree, who are entitled to share in the personal property, including Grace McCubbin, the administratrix, Louise Vicker and Violet Morrow, who are all adult first cousins related through decedent's maternal grandparents, Lorenzo and Madalena Oneto, and 21 relatives in the fourth degree, who were first cousins through decedent's grandmother, Honora Donovan; these 21 paternal first cousins were sons and daughters of six children born of a marriage between Honora Donovan and her second husband, John Huberty. Honora and her first husband had one son, James Donovan, the father of decedent. The 21 Huberty cousins were sons and daughters of half sisters and half brothers of decedent's father, James Donovan. The three maternal first cousins were respectively daughters of a sister and of a brother of decedent's mother, Kate Oneto.

Decedent never married; she had been an only child of the marriage of James Donovan and Kate Oneto, and when Eva M. Donovan died she left neither spouse, issue, parent, brother, sister, nor any child of a deceased brother or sister.

A hearing was held in due course on the petition to determine heirship. The court found that the three cousins, Mrs. McCubbin, Mrs. Vicker and Mrs. Morrow, are of the whole blood on the Oneto side and are cousins-german of decedent and related to her in the fourth degree, and also that the 21 surviving children of the three sons and three daughters of John and Honora Huberty are collateral kindred from the half blood on the Huberty side and are cousins of decedent and are also related in the fourth degree, citing Probate Code, section 253. That section states: "Collateral consanguinity is the relationship between people who spring from a common ancestor, but are not in a direct line. The degree is established by counting the generation from one relative up to the common ancestor and from the common ancestor to the other relative. In such computation the first relative is excluded, the other included, and the ancestor counted but once. Thus, brothers are related in the second degree, uncle and nephew in the third degree, cousins german in the fourth, and so on."

The court held that the Huberty claim had merit insofar as it related to the personal property in the estate, but did not apply to the real property situated in San Andreas called the "Donovan Place"; counsel for respondent concede that the real property had come to the decedent solely from the Oneto ancestor. Section 254 of the Probate Code reads as follows: "Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are."

In construing this section, the Supreme Court has limited the exclusion to real property, and, consequently, the Huberty heirs, not being of the blood of the ancestor from whom the real property came, are excluded. (*Estate of Ryan,* 21 Cal.2d 498 [133 P.2d 626]; *Estate of Knight,* 57 Cal.App. 2d 1010 [136 P.2d 68]; 16 Cal.Jur.2d, Descent and Distribution, § 36, pp. 69-70; 54 A.L.R.2d, pp. 1017-1019, 1044.) However, the court concluded that the 24 claimants are entitled to succeed equally to that part of the estate which consists of personal property.

The three "Oneto" cousins appealed from that part of the order which held that each of the other 21 cousins through the half blood were also entitled to succeed to an equal portion of the personal property. There was no appeal from that part of the order having to do with the real property, but the three Oneto cousins claim they only should be entitled to share equally in the personal property as well, thus excluding the 21 cousins through the half blood from any part of the estate.

The appellants claim that there is nothing in the law that recognizes any right on the part of the 21 cousins of the half blood, and that the three maternal full cousins are entitled to share among them all of the personal property left by decedent, they being "cousins-german" in the fourth degree. The appellants also complain that only one of the 21 relatives of the half blood, who are entitled according to the court's order to share in the personal property of the decedent, actually filed a claim in the proceeding; appellants' counsel apparently believes that the order of the court is a nullity as to the other relatives of the half blood.

It can be conceded that the definitions of "cousins-german," over which the counsel for appellants has labored industriously, are correct. As an example, one finds in Black's Law

Dictionary, Fourth Edition, page 816, the following definition of "german" as applied technically to relationship: "Whole, full, or own, in respect to relationship or descent. Brothers-german, as opposed to half-brothers, are those who have both the same father and mother. Cousins-german are 'first' cousins; that is, children of brothers or sisters." (See also 10 Words and Phrases, p. 280; 16 Cal.Jur.2d, Descent and Distribution, § 4, p. 11; 11 C.J.S., Blood, p. 366.)

But the mistake made by the appellants is to seize upon what amounts merely to an illustration in section 253 of the Probate Code, already quoted, and to found and base their whole case upon a treatment of the illustration as being a specific direction with respect to the rights of relatives of the half blood.

This code section does not say cousins of the half blood are excluded or that they are in any other degree than the fourth degree. Just as this set of illustrations does not say brothers and *sisters* are related in the second degree, or *aunt* and nephew in the third degree, it does not state that cousins of the half blood are related in the fourth degree. To indulge in extended assumptions based on an illustration of this kind is to close one's mind completely to the very specific provision of section 254 of the Probate Code, which in no uncertain terms says that as to the property here in question "Kindred of the half blood inherit equally with those of the whole blood in the same degree, . . ."

Counsel for appellants incorrectly reaches the conclusion in his brief that all cousins, except cousins-german, are excluded from inheriting personal property of a decedent in complete disregard of section 251 of the Probate Code, which establishes that the degree of kindred is ascertained by the number of generations, that each generation is called a degree, and section 254 of the Probate Code, which in no uncertain language provides that kindred of the half blood inherit equally with those of the whole blood in the same degree when personal property is considered.

In volume 2, California Practice, Condee, Probate Court Practice, Second Edition, section 1653, page 478, the text states that: "Kindred of the half blood inherit equally with those of the whole blood in the same degree," citing section 254 of the Probate Code, and in section 1654 on page 479, Condee, *supra*, states: "Kindred of the half blood inherit equally with those of the whole blood in the same degree. It was argued that a brother and a nephew of a deceased half

brother are not 'of the same degree.' This would require a forced construction for the nephew taken by representation and his inheritance is in the same degree as his uncle.

"The Probate Code excepts the equality of kindred of the half blood in those instances where the inheritance came to the decedent by descent, devise, or gift of ancestors not that of the person of the half blood. The Supreme Court has limited this type of property to apply to real property only, and only to the identical property received from the ancestor. The dictum in the Estate of Warnock applying the doctrine to personal property and holding that the estate property could be traced through transfers subsequent to inheritance was overruled.

"On the adoption of the Probate Code the words 'in favor of those who are' was added to the section providing that kindred of the half blood do not share in decedent's property which came to him from an ancestor whose blood they do not share. The rule as construed is that half blood kindred not of the blood of the ancestor from whom the decedent inherited property are excluded from sharing in it in favor of both whole and half blood kindred in the same degree who are of the blood of the ancestor. Where there is no kindred of the blood of the ancestor, the whole and half blood of the decedent share equally.

"Our statute concerning inheritance of those of the half blood is based on the doctrine of 'ancestral estates' which was known to the common law and to the legislators of 1850 when it was adopted in California. Half blood kindred who are the blood of the ancestor of decedent who was the 'last purchaser' may not be excluded but the property must have come to decedent by either bequest or gift, and the transactions and income therefrom are included."

In the *Estate of Nidever,* 181 Cal.App.2d 367, 385 [5 Cal.Rptr. 343], the court discussed inheritance by relatives of the half blood and considered Probate Code sections 254, 253, and 225. The court stated that half-sisters and half-brothers of a deceased come within the second degree of consanguinity, while children of a full brother are related to decedent in the third degree. It holds that degree is thus determined by generation, not relationship of the whole or half blood.

The other contention of appellants that, as only one of the 21 cousins of the half blood filed a claim in the proceeding, the court could not allow recovery by the 20 who did not directly participate is wholly without foundation. The court

acquired jurisdiction of the proceedings to determine heirship upon proof of service of notice. (*Estate of Sutro,* 143 Cal. 487 [77 P. 402]; *Edlund* v. *Superior Court,* 209 Cal. 690 [289 P. 841].)

An heirship proceeding is in rem, and, if the statutory notice is given, the court acquires jurisdiction over all persons for the purpose of determining their rights in the estate. (*Estate of Radovich,* 48 Cal.2d 116, 121 [308 P.2d 14].)

The order is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied January 25, 1967, and appellants' petition for a hearing by the Supreme Court was denied February 21, 1967.